# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3743 | **DATE** | 3/19/2002 |
| **CASE TITLE** | Carolyn Smith vs. American General Life And Accident Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to reconsider order granting defendant partial summary judgment [56-1] is denied. Status hearing set for 4/2/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | **2** number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 2 0 2002 date docketed | |
| | Docketing to mail notices. | | **57** |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MD | courtroom deputy's initials | 3/19/2002 date mailed notice | |
| | | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CAROLYN SMITH,     )
                       )
     Plaintiff,     )
                       )
     v.     )     No. 99 C 3743
                       )
AMERICAN GENERAL LIFE     )
AND ACCIDENT INSURANCE     )
COMPANY,     )
                       )
     Defendant.     )

DOCKETED

MAR 2 0 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff has moved to reconsider this court's February, 2002 order granting defendant partial summary judgment on plaintiff's three-count complaint. Plaintiff challenges this court's ruling on all three counts. For the reasons set forth below, the court denies the motion.

Counts I and II (Liability Ruling)

On Counts I (common law fraud) and II (Illinois Consumer Fraud Act), the court granted summary judgment on three of the four alleged misrepresentations – (1) computerized receipts indicating plaintiff owed increased premium for coverage for Isaac, (2) application for the second policy on Isaac's life shown to plaintiff by a supervisor purporting to bear plaintiff's signature, and (3) application for the second policy on Isaac's life sent by American General to plaintiff's counsel, bearing Isaac's forged signature – but held that plaintiff could go to trial on the fourth representation, the hand-written receipt book entries. Plaintiff challenges the court's ruling on only one of the three representations – the computerized receipts. Plaintiff contends that the Rule



56.1 statements relied upon by the court to find lack of reliance/materiality/causation[1] merely accurately describe the information on the computerized receipts and do not show plaintiff's knowledge of the falsity, since "[n]owhere does plaintiff . . . claim that she compared the receipts to her policy, or that she had memorized the original policy number." (Mot. Reconsider, at 1.) Plaintiff claims that her affidavit shows that only later did defendant's agent claim that she had applied for a new policy. (*Id.*)

The court concludes there was no error of fact or reasoning in its summary judgment opinion. In her summary judgment briefing under Count I, plaintiff specifically set forth four allegedly false representations and this court addressed each one under the standards for a claim under common law fraud. As for the computerized receipts, plaintiff had asserted they were false because they represented she owed an increased premium. The court concluded, and still does, that plaintiff failed to prove reliance, materiality and causation of this allegedly false representation. Even if plaintiff had not compared the computerized receipts to the prior policy, a review of her affidavit shows she had knowledge that the increased premiums reflected on the receipts were not what she had contracted for (and thus were false), because she set out to rectify the situation. Thus, her reliance on the truth of the representations did not cause her damages, and they were not material since there was no evidence that if she had known that she did not owe an increased premium she would done something other than seek to rectify the situation.

---

[1]The court found plaintiff's own evidence showed she had knowledge of the falsity of the representations (i.e. the computerized receipts did not represent what she had signed up for under the original policy), because when she "received her first computerized receipt, it showed a new policy number for Isaac different from the original and an increased premium" (Pl.'s 56.1 Statement, ¶ 14), and she paid the increased premium "even while seeking to learn . . . why she was paying more for the same policy" (*Id.* ¶ 15).

2

Because Count II also required materiality and causation, the computerized receipts also failed to state a claim under Count II.

During the status hearing held on March 18, 2002, plaintiff also clarified her understanding of why she believes the court's summary judgment ruling leaves nothing to be tried. As the court understands plaintiff's attorney, plaintiff's theory is that the policy did not lapse, and thus presumably, the allegedly fraudulent hand-written receipt book entries indicating the policy was in effect (the only representations left in the case) could not have been the cause of her damages. He also referred to Judge Holderman's prior ruling on the motion to dismiss, which appears to preclude recovery for damages other than the increased premiums. Thus, plaintiff relies exclusively on the computerized receipt entries as causing her damages.

The court concluded, and still does, that plaintiff could recover under Counts I and II on the hand-written receipt book entries for the increased premiums paid and the payment to her attorney to collect under the original policy, because the evidence showed that she relied on the truth of these entries as indicating her original policy was still in effect, and such reliance proximately caused her to pay the increased premiums and the contingency fee. (*See* Mem. Op. and Order, at 12 and n. 9.) Despite plaintiff's insistence, now, that she was not basing her fraud claim on the hand-written receipt book entries because the policy had not lapsed, not only is the court's ruling consistent with plaintiff's summary judgment arguments (*see* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., 7-10) (arguing that the receipt book entries were fraudulent where agents knew the policy had lapsed but continued to make the entries intending plaintiff rely on them, and she relied by continuing to make payments up to the time of Isaac's death), but it is consistent with her arguments at the motion to dismiss stage as well. (*See Smith* v. *Am. Gen. Life*

*and Accident Ins. Co.*, No. 99 C 3743, 1999 WL 965712, *2 (N.D. Ill. Sept. 29, 1999) (Holderman, J.) ("Plaintiff alleges the following false misrepresentations: (1) stamps in a receipt book between 1991 and 1996 which plaintiff alleges are defendant's false representation that the Policy was still in effect. . . . ")). In other words, by so framing her motions, she was claiming that one of the alleged misrepresentations for which she could recover her damages were the receipt book entries. To make this argument and prevail she had to prove the representations were false. To prove they were false she had to concede that the policy had lapsed. This concession, however, does not mean she had to forego recovery under the original policy for the full $15,000.00, a point which defendant appears to concede since even though its records showed the original policy had lapsed, it paid the amount of that policy. *See also Rensselaer* v. *Midstates Inc. Co.*, 334 Ill. App. 389, 79 N.E.2d 530 (1st Dist. 1948) (actions of agent created oral policy binding on insurer although no policy ever issued since insurer bound by acts of agent performed within scope of his apparent authority even if agent was activated by fraudulent intent).

Moreover, the court disagrees with plaintiff that Judge Holderman's opinion precludes recovery for any damages other than increased premiums. As the court reads Judge Holderman's opinion, the only damages under Counts I and II that were preempted were those that would also support a claim for vexatious delay. *See Smith*, 1999 WL 965712, at *5 ("[T]o the extent Counts I and II seek damages stemming from conduct in refusing to pay or delay in paying benefits, they are preempted by § 155."). Because this court had found the remaining claims to be based on conduct separate from that under the vexatious delay claim, the remaining claims are not preempted.

4

To recap, under Count I, to prove common law fraud, plaintiff is required to establish (1) a false statement of material fact; (2) defendant's knowledge or belief that the statement was false; (3) defendant's intent to induce plaintiff to act; (4) plaintiff's reliance on the truth of the statement; and (5) plaintiff's damages resulting from that reliance. *See Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 479 n. 5 (7th Cir. 1997) (citation omitted). In its summary judgment opinion, the court found evidence of each of these elements with respect to the hand-written receipt entries:  (1) the hand-written receipt book entries were false because they purported to represent that the original policy was in effect when it had (for whatever reason), lapsed, according to defendant's records; (2) defendant knew the representations were false in that there was evidence that although plaintiff continued to pay the agents that came to collect her money, the policy was not being credited and the agent whose name appeared on the forged application was also collecting premiums under the initial policy; (3) defendant, through its agents, intended to induce plaintiff to continue to pay premiums[2]; (4) plaintiff relied on the truth of the hand-written representations that the policy was in effect; and (5) although defendant's later agents apparently tried to clear up the situation by telling her that she had signed an application for another policy (e.g., a supervisor told her that he would look into the situation after she showed him her receipt books) and told her the original policy had lapsed after she had been paid only $7,500.00, until the situation was cleared up, she continued to justifiably rely on the hand-written receipt entries (together with her knowledge that she did not cancel the original

---

[2]Although defendant contended the disappearance of the premiums might be due to a bookkeeping error, which if true, might tend to weaken the evidence that "BW" made the hand-written receipt book entries with knowledge that they were false and intending plaintiff to rely on them, with respect to collection by "J. Franco," if plaintiff proves he is the "Johnny Franco" who had filled out the application for the second policy, she would likely prove he intended her to rely on the truth of the representations that the original policy was in effect.

policy and had not filled out an application for a second policy) which caused her to pay higher premiums even after she received the computerized receipts in 1996 and caused her to pay her second attorney to follow through with her investigation once it became clear she was not going to be paid on the original policy. In other words, until it was proven to her that the original policy had lapsed, she was justified in believing the truth of the hand-written receipt book entries.

Certainly, if plaintiff proves the elements of fraud, *supra*, she will also prove her Consumer Fraud Act claim under Count II. Indeed, her burden is even easier because she need not prove actual reliance or that defendant's agents knew the policy had lapsed. It is sufficient if she shows: (1) that the hand-written entries were false (and there is evidence of this by defendant's own records showing lapse); (2) that defendant intended plaintiff to rely on the hand-written entries; (3) that the hand-written receipt entries were material[3]; (4) and causation.

The court notes that although it granted summary judgment on the basis that the computerized receipts and applications for second policy did not constitute actionable fraudulent representations in and of themselves, that does not bar plaintiff from using the evidence as background as tending to prove the elements of the claims that did survive. For example, the forged application could show that the agent had knowledge that the policy had lapsed. The conversation plaintiff had with the supervisor wherein he claimed he would look into the

---

[3]Although defendant essentially argued that plaintiff's deposition testimony showed that the hand-written receipt book entries were not material because she stated in her deposition that if she had known earlier that the policy was not in effect she would have done the same thing that she did when she found out that it was not the correct amount which was to "try[] to straighten it out" (*see* Def.'s 56.1 Statement, Ex. 1, Smith Dep. at 89), the court concluded they were. Unlike with the other allegedly fraudulent representations, the court does not consider her testimony as going to show the hand-written receipt book entries were not material. Had she truly known in September, 1992 that the policy had lapsed and tried to straighten it out then, her trying to "straighten out" the situation would likely not have entailed paying on a policy she knew was not in effect, but she likely would have insisted the policy be reinstated. In other words, the reasonable inference is that she would have done something different had she known the policy was not in effect than she did in reliance on the truth of the representations that it was in effect, which was to continue paying the premiums and pay her attorney.

situation after she showed him her hand-written receipt book entries could go to show her continued reliance on those entries, at least until defendant proved the policy was not in effect.

As part of her proof on Counts I and II, in order to hold the corporation liable for the agent(s)' alleged fraud, plaintiff has to prove their apparent authority to make the hand-written receipt book entries; as this court had noted before, plaintiff has put forward sufficient evidence of this to go to trial. (*See* Mem. Op. and Order at 12, n.10.) If plaintiff proves her claim under Counts I and II, she will be entitled to not only the difference between premiums paid and the contingency fee paid to her attorney (as compensatory damages), but she may also seek attorneys fees for this litigation with respect to Count II, since the statute allows for such. *See* 815 ILCS 505/10a (". . . the Court . . . may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party").

Counts I and II (Punitive Damages Ruling)

The court also granted partial summary judgment to defendant on the issue of whether plaintiff could recover punitive damages on Counts I and II. Plaintiff challenges the ruling arguing (1) ratification by Holland (a manager) because Holland reviewed the information provided by plaintiff and the forged application and "still failed to pay" and (2) ratification by American General because it continued to maintain throughout this litigation that its agents did nothing wrong, *see Robinson* v. *Wiebolt Stores, Inc.*, 104 Ill. App. 3d 1021, 433 N.E.2d 1005 (1st Dist. 1982).

With respect to plaintiff's first contention, the evidence cited by plaintiff (which the court considered before)[4] is not evidence of corporate ratification but shows Holland was proceeding

---

[4]Holland Aff. ¶ 2, and Mar. 5 and 17, 1999 letters.

with an investigation, which the court determined was reasonable given the discrepancy between the two policies. With respect to plaintiff's second argument, not only did plaintiff fail to cite *Robinson* in her briefing of the summary judgment motion, but *Robinson* is distinguishable. The issue in *Robinson* was false imprisonment and there was no question that the 66-year old plaintiff had not stolen anything once she showed her receipt to the security guard who had roughly apprehended her in the store, yet the guard did not apologize and the store defended his actions throughout the litigation. Here, by contrast, plaintiff has alleged various fraudulent representations made by defendant's agents, only one of which the court found to survive summary judgment (as to that one there was a question of fact such that plaintiff was not entitled to summary judgment), which she still has to prove. As to the forgery, this is not an action for forgery, and plaintiff has not pointed to any argument made by defendant in which defendant has defended the actions of forgery (as opposed to whether that forgery was an actionable fraudulent misrepresentation). Indeed, the evidence is that once the forgery became clear to defendant's management, defendant paid on the original policy.

Count III – Vexatious Delay

Finally, the court granted summary judgment to defendant on plaintiff's vexatious delay in paying claim under the Illinois Insurance Code, 215 ILCS 5/155. Plaintiff challenges this ruling arguing that this court made an error of law because it "applied the corporate complicity rule for punitive damages to a claim for vexatious refusal to pay claim" and "plaintiff has found no Illinois decision that applied the corporate complicity rule for punitive damages to a claim for vexatious failure to pay a claim under the insurance code." (Mot. Reconsider, at 4.) Plaintiff cites *Brandt* v. *Time Ins. Co.*, 302 Ill. App. 3d 159, 704 N.E.2d 843 (1st Dist. 1998), for the

proposition that in a claim under § 155, the court must impute the knowledge of the agent to the company. (*Id.*)

Not only did plaintiff not cite *Brandt* in briefing the summary judgment motion or discuss the legal basis for imputing the agents' knowledge to the corporation for vexatious delay purposes, but *Brandt* does not go the extra step plaintiff seeks in this case. In *Brandt*, the trial court had granted summary judgment to defendant insurance company on the plaintiff's breach of contract and § 155 claims on the ground that the policy was "void *ab initio*" since plaintiff had made material misrepresentations in her application for coverage regarding a preexisting condition. The appellate court reversed, reasoning that if the person who filled out her application was the agent of the insurance company (of which there was a question of fact) then his knowledge of plaintiff's preexisting condition could be imputed to the company such that the insurance company was estopped from relying on the misrepresentation as a basis for rescission of its policy. Therefore, the trial court was wrong to grant summary judgment on the basis that the policy was void *ab initio*. *Id.* at 847-48.

Although *Brandt* imputed the agent's knowledge to the corporation for purpose of rendering the policy effective, it did not address head on the issue here – whether, assuming the policy is or should have been in effect, the earlier agents' (those collecting premiums and the supervisor to whom she complained) knowledge about the existence of that policy should be imputed to those later investigating the claim, such that any delay as a result of the investigation rendered the defendant liable for vexatious damages. This court has found a case by the Missouri Supreme Court strictly construing its own vexatious refusal statute and holding that it was unwarranted to impute an agent's fraud to defendant where the agent was not connected to the

9

decision about payment. *See John Hancock Mut. Life Ins. Co. v. Hughes*, 152 S.W.2d 132, 134-35 (Mo. 1941) ("There are sound reasons why this rule as to constructive knowledge of the company should not be applied in connection with inflicting penalties for vexatious delay. While it is the duty of the soliciting agent to secure applications, he has no function whatever in regard to resisting the payment of claims.").

Illinois' § 155 is also penal in nature and is to be strictly construed, *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000), and the court finds the reasoning of the Missouri court persuasive. In Illinois, "[t]he determination [as to vexatious delay] is based on the insurer's attitude, considering the totality of circumstances." *Green v. Int'l Ins. Co.*, 238 Ill. App. 3d 929, 935, 605 N.E.2d 1125, 1129 (2d Dist. 1992). To hold that an insurer's *attitude* about paying a claim includes the constructive knowledge of its agents with whom plaintiff has shown no connection to the claim/payment process, would, in this court's opinion, undermine the insurer's ability to investigate a claim and render the statute unduly punitive. *Cf. Hughes*, 152 S.W.2d at 134 ("It is only when [the insurer] persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay."). The court clarifies that its reference to the "corporate complicity" doctrine (by way of referring to its analysis with respect to the punitive damages claim) was not to suggest that such doctrine strictly applies in the vexatious delay context, but rather to convey the point expressed by the Missouri Supreme Court in *Hughes*. To the extent that the opinion suggests otherwise, it is to be construed in light of this clarification. However, the court continues to adhere to its original conclusion that defendant is entitled to summary judgment because there is no evidence that the persons involved in investigating plaintiff's claim

10

after Isaac died had the knowledge of those involved in the alleged fraud or the knowledge of plaintiff's complaints to the supervisor, and had to come by knowledge of the existence of the prior policy and invalidity of the second policy through investigation of plaintiff's claim.

Plaintiff also argues an error of fact in that there was evidence of vexatious delay because it would not be reasonable for Holland (or anyone investigating the claim) to make any assumption other than there had been a forgery once presented with the application for the second policy showing Isaac's name misspelled and a different social security number. Upon reviewing the facts once again, the court disagrees. Although certainly an insurer would be entitled to draw the conclusion plaintiff would draw based on a comparison of the applications alone, and it is unlikely that Isaac (the purported signatory of the second application) did not know how to spell his name or did not know his social security number, an insurer is not required to accept on word of mouth (even if it is the insured's) that its agent had acted fraudulently, and thus would be justified in asking for documentary exemplars to confirm the forgery. While the court does not suggest that there may never be a factual scenario in which asking an insured for writing exemplars would be considered vexatious, on the evidence presented by plaintiff in this case it was not.

## CONCLUSION

For the reasons set forth above, the court denies plaintiff's motion to reconsider. Once again, the court strongly urges the parties to engage in good faith settlement discussions in light of its opinion. The parties are to appear for status on Tuesday, April 2, 2002, at 9:30 a.m.

Date: March 19, 2002

Enter: _Joan H. Lefkow_
JOAN HUMPHREY LEFKOW
United States District Judge